LISA D. HARDIE, OSB #080783
TROUTMAN SANDERS LLP
1000 SW Main, Suite 1000
Portland, OR  97204
Telephone:  (503) 290-2334;
Facsimile:  (503) 290-2405
lisa.hardie@troutmansanders.com

TERRENCE R. McINNIS, CSB #155416
(*pending admission pro hac vice*)
terrence.mcinnis@troutmansanders.com
WILLIAM D. BURGER, JR., CSB #234915
(*pending admission pro hac vice*)
william.burger@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614
Telephone:  (949) 622-2756
Facsimile:  (949) 769-2090

*Attorneys for Plaintiffs Amy's Kitchen, Inc.*
*and Houston Casualty Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT COURT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **AMY'S KITCHEN, INC.,** a California corporation; and **HOUSTON CASUALTY COMPANY**, a Texas corporation;<br><br>    Plaintiffs,<br><br>  v.<br><br>**STUKEL MOUNTAIN ORGANICS LLC.**, an Oregon limited liability company; and **MALIN POTATO COOPERATIVE, INC**., an Oregon corporation<br><br>    Defendants. | No. 1:16-cv-00071<br><br>COMPLAINT FOR<br>(1) NEGLIGENCE<br>(2) BREACH OF CONTRACT<br>(3) BREACH OF EXPRESS WARRANTY<br>(4) BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE<br>(5) BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Amy's Kitchen, Inc. and Houston Casualty Company (collectively referred to as "Plaintiffs"), by and through their attorneys, for their Complaint against Stukel Mountain Organics LLC, and Malin Potato Cooperative, Inc. (collectively referred to as "Defendants"), allege as follows:

## THE PARTIES

1.     Plaintiff Amy's Kitchen, Inc. ("Amy's") is a corporation established under the laws of the State of California and with its principal place of business in Petaluma, California. At all times relevant hereto, Amy's has been authorized to and has conducted business in the State of Oregon.

2.     Amy's is the manufacturer of organic, vegetarian foods.  It offers in excess of 250 organic products and sells those products to supermarket stores across the United States and internationally.  Amy's operates a production plant in White City, Oregon, at which it manufactures, among other food items, soups containing potatoes.

3.     Plaintiff Houston Casualty Company ("HCC") is an insurance company incorporated under the laws of the State of Texas and with its primary place of business in Houston, Texas.

4.     HCC issued a Malicious Product Tampering/Accidental Product Contamination Insurance Policy to Amy's (the "Policy").  Pursuant to the terms of the Policy, HCC issued payment to Amy's – in excess of the jurisdictional minimum of this Court – for loss suffered by Amy's arising from the acts and omissions of Defendants discussed below.  Accordingly, pursuant to the terms of the Policy, and pursuant to applicable law, HCC is subrogated to Amy's claims against Defendants to the extent of the payment issued.

5.     Defendant Stukel Mountain Organics LLC ("Stukel") is a limited liability company established under the laws of the State of Oregon and with its principal place of business in Merrill, Oregon.

6.      Stukel is a supplier of organic potatoes.  Stukel supplied, shipped and delivered some or all of the potatoes which form the basis for the allegations contained in this Complaint.

7.      Defendant Malin Potato Cooperative, Inc. ("Malin") is a corporation organized under the laws of the State of Oregon and with its principal place of business in Klamath Falls, Oregon.

8.      Malin is a potato cooperative to which Stukel belongs, and to which it belonged at all times relevant to the allegations contained in this Complaint.  On information and belief, Malin assisted Stukel with, and served as Stukel's agent, in the supplying, packing, shipping and delivery of the potatoes which form the basis of the allegations contained in this Complaint.

9.      Plaintiffs are informed and believe and thereupon allege that at all relevant times, all Defendants were agents, servants, partners and/or employees of all other Defendants, and that each of the Defendants was acting within the course and scope of their authority as agents, servants, partners and/or employees of the other Defendants when committing the acts and omissions described herein.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332.

11.      Plaintiff Amy's is a citizen of California within the meaning of 28 U.S.C. § 1332(c)(1).

12.      Plaintiff HCC is a citizen of Texas within the meaning of 28 U.S.C. § 1332(c)(1).

13.      Defendant Stukel is a citizen of Oregon within the meaning of 28 U.S.C. § 1332(c)(1).

14.      Defendant Malin is a citizen of Oregon within the meaning of 28 U.S.C. § 1332(c)(1).

15.      This action involves a dispute over whether Defendants should be held responsible for the over $1.5 million in damage caused as a result of Defendants' supplying contaminated potatoes to Amy's.  Accordingly, the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     This action is currently ripe for adjudication.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §1391.  Defendants both maintain their principal place of business in this District, and a substantial part of the events giving rise to the claims at issue occurred in this District.

## BACKGROUND ALLEGATIONS

18.     On or about May 28, 2014, Stukel executed a "Continuing Food Guarantee and Indemnification" agreement (the "Agreement") with Amy's.  A copy of the Agreement is attached hereto as Exhibit A.

19.     The Agreement provides, in pertinent part, that

> [Stukel] gives Amy's its continuing agreement and guarantee that all food and packaging Ingredients ("Raw Materials") supplied by [Stukel] to Amy's shall be: (1) in compliance with Amy's applicable Purchase Orders ("PO"), Specification(s), this Guarantee and other documentation supplied by Amy's to [Stukel] (collectively "Contractual Documents"), and (2) In compliance with all applicable federal, state and local laws governing (i) the quality, condition and safety of food for human consumption and (ii) non-adulteration and misbranding (the "Applicable Laws"), and shall otherwise meet Amy's quality assurance standards.

20.     The Agreement further provided that "All Raw Materials supplied by [Stukel] shall be shipped in accordance with Amy's Contractual Documents, or, absent shipping information, under conditions consistent with industry standards."

21.     Moreover, the Agreement provides that Stukel "agrees to indemnify, defend and hold harmless Amy's at all times after the Effective Date of [the Agreement] from and against any and all costs, liabilities, loss and/or damages (including reasonable attorneys fees) resulting from any negligent or intentional act or omission or the violation of any federal, state or local law or regulation by [Stukel] arising out of or in connection with [Stukel's] supply of Raw Materials to Amy's."  Finally, the Agreement provides that its interpretation, and the interpretation of all other "Contractual Documents," shall be subject to California law.

22.     Defendants are, and at all times were, aware that Amy's intended to use the potatoes in the production of food for human consumption.

23. In December 2014, Amy's purchased a bulk order of over 27,000 pounds of organic potatoes from Stukel. Amy's shipped to Defendants in an enclosed and sealed truck enough cleaned and folded collapsible bins to hold the potatoes.

24. On information and belief, following arrival at Defendants' facilities, Defendants or their agents unsealed the truck, unloaded the collapsed bins, and reconstructed them to be filled with potatoes. In the course of reconstructing the bins, and later preparing them to be loaded with potatoes, Defendants had the opportunity to observe any debris that may have been present in the bins or any damage to the bins, and to remove such debris or damaged bins.

25. After Defendants filled the bins with potatoes, they were returned to Amy's White City, Oregon facility in an enclosed and sealed truck. Upon arrival, the bins were unloaded by Amy's personnel and held in cold storage for use in producing soup.

26. During the course of emptying the bins for processing, and after some of the potatoes had already been processed into soup, Amy's discovered foreign debris in some of the bins, including pieces of glass, plastic, paper and metal. At least one potato was discovered with embedded metal. Most of the debris was located at or near the bottom of the bins, and so was not visible until after the bins were emptied. The type and amount of debris discovered was highly unusual and unprecedented in Amy's experience.

27. In light of the discovery of the substantial amount of dangerous debris in the bins of potatoes provided by Defendants, Amy's stopped production of the food products containing the potatoes supplied by Defendants. The finished product containing those potatoes was destroyed, as were the potatoes that had not yet been used. As a result, Amy's suffered damage in excess of $1,500,000. Pursuant to the terms of the Policy, HCC issued payment to Amy's for a portion of that loss in excess of the jurisdictional minimum of this Court.

28. Upon suffering the loss noted above, HCC and Amy's tendered their losses to Defendants for payment pursuant to the Agreement and applicable law. In response, Defendants refused to reimburse Plaintiffs for any costs, liabilities, loss, damages and/or attorney's fees incurred as a result of Defendants' acts or omissions.

## FIRST CAUSE OF ACTION

### NEGLIGENCE – AGAINST DEFENDANTS

29.     Plaintiffs incorporate by reference each of the preceding paragraphs of this Complaint as if fully restated here.

30.     Defendants had a duty to supply Amy's with potatoes of sufficient quality that were appropriate for human consumption.

31.     Defendants breached that duty by providing Amy's with bins of potatoes containing dangerous debris – including glass, plastic, and metal – such that the potatoes provided by Defendants were unfit for human consumption.

32.     As a direct and proximate cause of Defendants' breach of their duty to Amy's, Amy's was required to destroy thousands of pounds of potatoes as well its finished product, lost profits, and suffered other damage in a total amount to be established at trial but in excess of $1,500,000.

33.     By virtue of its payment under the Policy, HCC was also harmed by Defendant's conduct in an amount in excess of the jurisdictional minimum of this Court, and is subrogated to Amy's claims against Defendants in the amount of its payment to Amy's under the Policy and other amounts to be established at trial.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT – AGAINST STUKEL

34.     Plaintiffs incorporate by reference each of the preceding paragraphs of this Complaint as if fully restated here.

35.     Pursuant to the Agreement, and all documentation incorporated into the Agreement,  Stukel was obligated to indemnify and hold Amy's harmless with regard to all costs, liabilities, loss and/or damages (including reasonable attorney's fees), associated with any negligent or intentional act or omission by Stukel in providing potatoes to Amy's.

36.     Amy's relied on Stukel's promises contained in the Agreement and all documentation incorporated into the Agreement through its December 2014 purchase of potatoes

from Stukel.  Further, Amy's satisfied each of its obligations under the Agreement and all documentation incorporated into the Agreement.

37.    Stukel breached the Agreement by failing to supply potatoes in compliance with (a) Amy's specification(s), (b) applicable federal, state and local laws governing the quality, condition and safety of food for human consumption, (c) non-adulteration laws, and (d) Amy's quality assurance standards.  Moreover, Stukel further breached the Agreement by failing and refusing to indemnify, defend and hold harmless Amy's from and against any and all costs, liabilities, loss and/or damages (including reasonable attorneys fees) resulting from any negligent or intentional act or omission or the violation of any federal, state or local law or regulation by Stukel arising out of or in connection with Stukel's supply of potatoes.

38.    As a direct and proximate cause of Stukel's breach of contract, Amy's was harmed in the amount to be established at trial, but at least in the amount of $1,500,000.

39.    By virtue of its payment under the Policy, HCC was also harmed by Stukel's breach of contract in an amount in excess of the jurisdictional minimum of this Court, and is subrogated to Amy's claims against Stukel in the amount of its payment to Amy's under the Policy and other amounts to be established at trial.

## THIRD CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY – AGAINST STUKEL

40.    Plaintiffs incorporate by reference each of the preceding paragraphs of this Complaint as if fully restated here.

41.    Pursuant to the Agreement, Stukel warranted, among other things, to supply potatoes in compliance with (a) Amy's specification(s), (b) applicable federal, state and local laws governing the quality, condition and safety of food for human consumption, (c) non-adulteration laws, and (d) Amy's quality assurance standards.  Moreover, Stukel further warranted that it would indemnify, defend and hold harmless Amy's from and against any and all costs, liabilities, loss and/or damages (including reasonable attorneys fees) resulting from any

negligent or intentional act or omission or the violation of any federal, state or local law or regulation by Stukel arising out of or in connection with Stukel's supply of potatoes.

42.    Stukel breached its warranties by failing to supply potatoes in compliance with (a) Amy's specification(s), (b) applicable federal, state and local laws governing the quality, condition and safety of food for human consumption, (c) non-adulteration laws, and (d) Amy's quality assurance standards.  Stukel further breached its warranties by failing and refusing to indemnify, defend and hold harmless Amy's from and against any and all costs, liabilities, loss and/or damages (including reasonable attorneys fees) resulting from any negligent or intentional act or omission or the violation of any federal, state or local law or regulation by Stukel arising out of or in connection with Stukel's supply of potatoes.

43.    As a direct and proximate result of Stukel's breach of express warranty, Amy's was harmed in the amount to be established at trial, but at least in the amount of $1,500,000.

44.    By virtue of its payment under the Policy, HCC was also harmed by Stukel's breach of warranty in an amount in excess of the jurisdictional minimum of this Court, and is subrogated to Amy's claims against Stukel in the amount of its payment to Amy's under the Policy and other amounts to be established at trial.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE – AGAINST STUKEL

45.    Plaintiffs incorporate by reference each of the preceding paragraphs of this Complaint as if fully restated here.

46.    At the time of Amy's December 2014 potato purchase, Stukel, which is and at all relevant times was a merchant of potatoes, was aware of Amy's intent to use the purchased potatoes in food products for human consumption.

47.    Amy's relied on Stukel's skill and judgment to select and supply potatoes that were suitable for human consumption, and to provide those potatoes to Amy's in a manner and condition for use in food products.

48.    Accordingly, Stukel impliedly warranted to Amy's that the potatoes provided to Amy's would be suitable for human consumption.

49.    Stukel breached this implied warranty in that it provided potatoes to Amy's which were contaminated with dangerous debris, including glass, plastic and metal, and as such, were unfit for human consumption.

50.    As a direct and proximate cause of Stukel's breach of this implied warranty, Amy's was harmed in the amount to be established at trial, but at least in the amount of $1,500,000.

51.    By virtue of its payment under the Policy, HCC was also harmed by Stukel's breach of warranty in an amount in excess of the jurisdictional minimum of this Court, and is subrogated to Amy's claims against Stukel in the amount of its payment to Amy's under the Policy and other amounts to be established at trial.

## FIFTH CAUSE OF ACTION

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY – AGAINST STUKEL

52.    Plaintiffs incorporate by reference each of the preceding paragraphs of this Complaint as if fully restated here.

53.    Stukel is, and at all relevant times was, a merchant of potatoes.

54.    Accordingly, an implied warranty that the potatoes Stukel sells shall be merchantable and usable for their ordinary purpose is implied in any contract for sale of Stukel's potatoes.

55.    Stukel breached this implied warranty in that it provided potatoes to Amy's which were contaminated with dangerous debris, including glass, plastic and metal.

56.    As a direct and proximate cause of Stukel's breach of this implied warranty, Amy's was harmed in the amount to be established at trial, but at least in the amount of $1,500,000.

57. By virtue of its payment under the Policy, HCC was also harmed by Stukel's breach of warranty in an amount in excess of the jurisdictional minimum of this Court, and is subrogated to Amy's claims against Stukel in the amount of its payment to Amy's under the Policy and other amounts to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter a judgment:

A. Finding that Defendants acted negligently in connection with their actions referenced in this Complaint;

B. Finding that Stukel breached the Agreement and the documentation incorporated into the Agreement;

C. Finding that Stukel breached the express warranties provided in the Agreement and the documentation incorporated into the Agreement;

D. Finding that Stukel breached the implied warranty of fitness for a particular purpose;

E. Finding that Stukel breached the implied warranty of merchantability;

F. Awarding Plaintiffs damages in an amount to be determined at trial, but in no event less than $1,500,000.

G. Awarding Plaintiffs attorney's fees and costs; and

H. Ordering Defendants to comply with any additional terms of relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs respectfully request a trial by jury.

DATED:  January 15, 2016.                Respectfully submitted,

                                         TROUTMAN SANDERS LLP


                                          /s/ Lisa D. Hardie
                                         Lisa D. Hardie, Esq.
                                         Terrence R. McInnis, Esq.
                                         William D. Burger, Jr., Esq.

                                         *Attorneys for Plaintiffs Amy's Kitchen, Inc.
                                         and Houston Casualty Company*



# CONTINUING FOOD GUARANTEE AND INDEMNIFICATION

| Supplier Name |
| --- |
| Stukel Mountain |
| Date |
| 6-9-14 |

This Continuing Guarantee and Indemnification agreement ("Continuing Guarantee") is entered between the undersigned seller ("Seller") and Amy's Kitchen, Inc. ("Amy's"). Amy's and Seller agree as follows:

Seller gives Amy's its continuing agreement and guarantee that all food and packaging ingredients ("Raw Material") supplied by Seller to Amy's shall be:

1) In compliance with Amy's applicable Purchase Order(s) ("PO"), Specification(s), this Guarantee and other documentation supplied by Amy's to Seller (collectively "Contractual Documents"), and

2) In compliance with all applicable federal, state and local laws governing (i) the quality, condition and safety of food for human consumption and (ii) non-adulteration and misbranding (collectively "Applicable Laws"), and shall otherwise meet Amy's quality assurance standards.

None of the Contractual Documents may be modified or supplemented without Amy's prior written consent. Seller's shipment of a Raw Material pursuant to an Amy's PO shall constitute Seller's acceptance of the terms of Amy's PO and Amy's Specification. Any term or condition contained in a sales order acknowledgment or other document provided by Seller that adds to, differs from or conflicts with a term or condition in any of the Contractual Documents shall be unenforceable as to that provision unless approved by Amy's in writing. All Raw Materials supplied by Seller shall be shipped in accordance with Amy's Contractual Documents or, absent shipping information, under conditions consistent with industry standards. If Seller should fail to comply with any provision of the Contractual Documents or Applicable Laws, or should any dispute arise out of the parties' relationship, the prevailing party in any resulting litigation or other proceeding shall be entitled to recover its reasonable attorneys fees and costs. The Contractual Documents shall be governed by California law.

Seller agrees to indemnify, defend and hold harmless Amy's at all times after the Effective Date of this Continuing Guarantee from and against any and all costs, liabilities, loss and/or damages (including reasonable attorneys fees) resulting from any negligent or intentional act or omission, or the violation of any federal, state or local law or regulation by Seller arising out of or in connection with Seller's supply of Raw Materials to Amy's.

| Name Printed: _Jim Carleton_ | Title: _President_ |
| --- | --- |
| Company: _Stukel Mountain Organics LLC_ | Date: _5-28-14_ |
| E-mail: | Phone: _541-891-9424_ |
| Supplier Signature: _Jim Parth_ | |

| FOR AMY'S KITCHEN USE ONLY | | |
| --- | --- | --- |
| Form reviewed and approved by_____ _J Kuntz for Alyssa C_ | Date: _6-8-14_ | |
| Sourcing | | |

Amy's Kitchen, Inc.

Last Revised: 4/16/14

**EXHIBIT A**